# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ORLANDO BETHEL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 10-0651-WS-M |
| ) | |
| JUDGE CARMEN BOSCH, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This newly filed matter comes before the undersigned *sua sponte* on initial review.

### I. Plaintiffs' Frivolous Complaint.

Plaintiffs, Orlando and Glynis Bethel, who are proceeding *pro se*, filed this lawsuit pursuant to 42 U.S.C. § 1983 on November 26, 2010. Their Complaint purports to bring constitutional and non-constitutional claims against defendants Carmen Bosch, a family court judge in Baldwin County, Alabama; Huey Mack, the Sheriff of Baldwin County; Dean McGowan, a Baldwin County Deputy Sheriff; and Baldwin County. The sole factual predicate alleged in the Complaint is that on September 1, 2010, Judge Bosch "demanded that Glynis Bethel's children remain, unattended, in the hallway of the Baldwin County Courthouse" while Ms. Bethel went into the courtroom to appear before her. (Doc. 1, ¶ 5.)[1]

On the basis of that singular event, the Bethels purport to assert claims against all defendants for, *inter alia*, conspiring to violate their constitutional rights, malicious abuse of process, unspecified civil rights violations, intentional infliction of emotional distress, something called "refusing or neglecting to prevent," negligence, willful and knowing violation of the Bethels' rights under seven different constitutional amendments, and so on. The Bethels demand preliminary and permanent injunctive relief, declaratory judgment, compensatory damages of

---

[1] There are no factual allegations about Mr. Bethel, so his presence as a named plaintiff in the Complaint is an enigma.

$10 million and punitive damages of $50 million to alleviate their "sufferings" caused by this ostensibly traumatic event. The Complaint was not accompanied by either the requisite filing fee or an appropriate application to proceed *in forma pauperis*; rather, the Complaint specifies that "an application or [*sic*] IFP to waive fees will be submitted subsequently before the 120 days have expired." (Doc. 1, at 1.)

Plaintiffs' claims are obviously frivolous for at least two reasons. First, all claims for damages asserted against the individual defendants appear categorically insufficient to withstand review under the various immunities in play. *See, e.g., Ex parte City of Greensboro*, 948 So.2d 540, 542 (Ala. 2006) ("Judges acting in an official judicial capacity are entitled to absolute judicial immunity under Alabama law …."); *LeFrere v. Quezada*, 582 F.3d 1260, 1265-66 (11th Cir. 2009) ("Sheriffs, as constitutional officers, have sovereign immunity under Alabama law because actions against them are viewed as actions against the State. Deputies also have sovereign immunity …."); *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.") (citation and brackets omitted); *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) ("Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the clear absence of all jurisdiction.").

Second, even setting aside these formidable immunity protections extended to the judicial and sheriff's defendants the Bethels have chosen to sue, their claims founder on the fundamental principle that, as a matter of both state and federal law, trial judges enjoy extremely wide discretion in managing courtroom proceedings. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("The presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum."); *United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 102, 106 (5th Cir. 1974) ("we do not question the power of the district court to issue orders regulating conduct in the courtroom" because "[o]rdinarily the trial judge has extremely broad discretion to control courtroom activity"); *Hodges v. State*, --- So.2d ----, 2007 WL 866658, *34 (Ala.Crim.App. Mar. 23, 2007) ("The trial court is vested with much discretion to control the proceedings in its courtroom and to ensure that proper decorum is

maintained."); *Snyder v. State*, 893 So.2d 488, 512 (Ala.Crim.App. 2003) ("Every court has power to preserve and enforce order in its immediate presence; to prevent interruption, disturbance, or hindrance to its proceedings; and to control all persons connected with a judicial proceeding before it.") (citations omitted). More specifically, "[t]he decision whether to exclude persons from the courtroom during trial is a matter left entirely to the trial court's discretion." *Taylor v. State*, 808 So.2d 1148, 1200 (Ala.Crim.App. 2000).

The Complaint pleads no facts that might lend even the flimsiest support to any notion that Judge Bosch's directive that the Bethels' children (who are not infants or toddlers and are not alleged to require constant direct parental supervision) must remain outside the courtroom while Glynis Bethel came inside was an abuse of her discretion, or that the Sheriff or Sheriff's Deputies who enforced that directive could possibly have violated the Bethels' constitutional rights. In order to satisfy baseline federal pleading requirements, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citations omitted). Simply put, "[t]he well-pled allegations must nudge the claim across the line from conceivable to plausible." *Id.* (citation and internal quotation marks omitted). To satisfy the minimum pleading threshold, then, a complaint must state "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 2010 WL 4136634, *11 (11th Cir. 2010) (complaint must "provide enough factual material to raise a reasonable inference, and thus a plausible claim," of liability). Legal conclusions must be supported by factual allegations set forth in the complaint. But the Bethels' Complaint does not meet these fundamental pleading standards, inasmuch as no facts are presented tending to show that Judge Bosch's directive exceeded her broad discretion to manage her courtroom proceedings as she saw fit, or that officers' enforcement of that facially reasonable directive amounted to an intrusion on plaintiffs'

constitutional rights or a violation of any state or federal principle of constitutional, statutory or common law.[2]

For all of these reasons, the Complaint is **dismissed without prejudice** on grounds that it is inadequately pleaded and frivolous on its face.

## II. Plaintiffs' Long History of Abusive Filings.

Unfortunately, this lawsuit is but a drop in the bucket. The Bethels have a long and tortured history in this District Court of filing frivolous *pro se* lawsuits (primarily § 1983 actions against state, county and municipal governments and government officials in Baldwin and Mobile Counties). Review of this District Court's CM/ECF database reveals that plaintiff Orlando Bethel is a named plaintiff in 28 lawsuits filed in this District Court between March 2004 and today. Likewise, plaintiff Glynis Bethel is a named plaintiff in 31 lawsuits filed in this District Court between March 2004 and today.[3] The Bethels have not prevailed in a single one of those actions, and in fact most of those lawsuits have been dismissed at an early stage based on plaintiffs' failure to prosecute or to comply with court orders. Thus, a very clear pattern has emerged of the Bethels firing off § 1983 lawsuits that divert scarce judicial resources from other cases and other litigants, then failing and refusing to follow up as necessary to prosecute their actions. This pattern has squandered considerable court resources and delayed resolution of other cases where the litigants are actually proceeding in good faith on *bona fide* disputes.[4]

---

[2] The Complaint suggests that Judge Bosch's directive was tantamount to a "challenge" of Glynis Bethel's "rights to her parental acuthoirty [*sic*]." This is absurd, as the pleaded facts neither implicate nor infringe upon the Bethels' parental rights in the slightest.

[3] In addition to these traditional civil cases, the Bethels have brought 6 miscellaneous actions in this District Court for the ostensible purpose of perpetuating testimony (all of which petitions were denied), and have improperly removed another action to this District Court (which was summarily remanded to state court).

[4] Nor have the Bethels restricted their litigiousness to this District Court. The undersigned's research reflects that Glynis Bethel is a named plaintiff in 6 lawsuits, and Orlando Bethel is a named plaintiff in 7 lawsuits, filed in the U.S. District Court for the Northern District of Florida between 2003 and 2009. Plaintiffs have apparently worn out their welcome in that district, inasmuch as Judge Vinson entered a sternly worded order dismissing one of those actions on October 4, 2010 as a sanction for the Bethels' campaign of disrespectful name-calling against a federal Magistrate Judge (whom they described in court filings as, among other things, a "witch-bitch from hell" who they prayed "will burn in hell forever"). Additionally, the Bethels filed a § 1983 action against the City of Jackson, Mississippi in the U.S. District Court for the
(Continued)

What the Court finds particularly alarming is that in recent weeks the Bethels have unleashed a veritable tidal wave of § 1983 litigation here. In the month of November 2010 alone the Bethels filed 13 lawsuits in this District Court, raising their total to 18 for the 2010 calendar year.[5] Preliminary review of the often lengthy, rambling and incomprensible pleadings in these new cases reveals that many (if not all) of them assert claims that suffer from glaring and obvious defects. For example, in *Orlando Bethel, et al. v. City of Mobile, et al.*, Civil Action No. 10-649-CG-C, the Bethels bring civil rights claims against Walgreens Corporation, Blackwell's Towing, and numerous other persons and entities (including the Mayor of Mobile) because Blackwell's towed plaintiffs' rather distinctive vehicle (which plaintiffs have festooned with messages such as "Repent or Burn in Hell" and "Wicked Baby Killing Whores") after plaintiffs knowingly and intentionally abandoned it for five hours in a Walgreens parking lot while conducting business elsewhere. In *Orlando Bethel, et al. v. Judge Charles Partin, et al.*, Civil Action No. 10-650-CG-N, the Bethels sue a state court judge for not allowing Glynis Bethel to operate a video camera inside his courtroom, and sue Sheriff Mack for enforcing the state court judge's directive on this point. In *Orlando Bethel, et al. v. Judge A. Kelli Wise, et al.*, Civil Action No. 10-652-KD-N, the Bethels sue an assortment of Alabama Court of Criminal Appeals judges and court personnel under a host of constitutional, civil rights, and common law theories for having the audacity to write a letter notifying the Municipal Court Clerk's Office that the record on appeal was due by April 12, 2010. In that action, plaintiffs also remarkably complain that they were denied their right to a jury trial even though the Bethels elected to appeal directly from Municipal Court to the Alabama Court of Criminal Appeals, thereby waiving any jury trial right. The kicker is that the Bethels name the Mayor of Bay Minette as a defendant in that lawsuit on the theory that the Mayor was "responsible for hiring the judge," whereas Glynis

---

Southern District of Mississippi in 2006, which action was subsequently dismissed. The Bethels also lodged a pair of unsuccessful § 1983 actions against municipalities in the U.S. District Court for the Middle District of Alabama several years ago. And a Westlaw search indicates that the Bethels have filed multiple civil actions in state courts in Florida and Alabama over the years, as well. The Bethels thus fit the classic paradigm of serial filers and recreational plaintiffs.

[5] Baldwin County Sheriff Mack, who is also a named defendant in this action, is a particular favorite target of the Bethels, as they have named him as a defendant in at least 7 lawsuits filed in this District Court this year alone.

Bethel "believes that a judge should be voted into office by the people." (In other words, the Bethels sue the Mayor for <u>following</u> Alabama law on judicial appointment procedures, simply because Mrs. Bethel personally would prefer the law to be different.) And in *Orlando Bethel, et al. v. University of South Alabama*, Civil Action No. 10-655-WS-C, the Bethels sue the University of South Alabama and its officials because campus police escorted Glynis Bethel out of a building on USA's campus after she, in her own words, had "begun to quote the Bible to whorish girls" at that location. Plaintiffs also insist that campus police violated her constitutional rights when they "refused to allow her to spit." This is but a sampling of the sorts of time-wasting, patently infirm claims the Bethels have been raising to clog the dockets of this District Court in recent weeks.[6]

### III. Prospective Restrictions on the Bethels' Filing Activities.

The Court does not know why the Bethels have chosen to file numerous labyrinthine, multi-defendant § 1983 actions in federal court over the years, or why they have elected to file upwards of a dozen such lawsuits here in the last few weeks. What the Court does know is that many of these actions appear frivolous on their face, and all have been filed at no cost to the Bethels (given that they have not retained counsel, have not paid filing fees, and in most cases have not even filed the requisite IFP petitions). In stark contrast to the numerous free rides through the federal judicial system that the Bethels are enjoying, their litigiousness has exacted and will continue to exact a heavy price on the finite resources of this District Court and, hence, on litigants in other matters as to whom justice will be delayed while those scarce resources are expended to process the Bethels' bounty. *See Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) ("Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants."); *Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986) (*en banc*) ("Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge."). The undersigned will no longer sit idly by as this District Court is inundated with a

---

[6] By all appearances, the Bethels are not finished, either. The Court understands that Glynis Bethel recently notified a Clerk's Office staff member of the Bethels' intent to file 20 lawsuits, so evidently there are more filings in the pipeline.

flood of harassing and vexatious litigation arising from whatever the Bethels' perceived multimillion-dollar constitutional affront *du jour* might be.

A litigant's "[a]ccess to the courts is unquestionably a right of considerable constitutional significance." *Miller*, 541 F.3d at 1096. However, that right "is neither absolute nor unconditional." *Id.* (citations omitted). In that regard, "[t]he courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary – including the Judges in this District – expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary." *In re Telfair*, --- F. Supp.2d ----, 2010 WL 4062223, *37 (D.N.J. Oct. 15, 2010) (footnote omitted). When *pro se* litigants abuse their right of access to the courts, as the Bethels have unquestionably done through the above-described behavior, federal courts have the power, and indeed the obligation, to impose restrictions to curtail such wasteful and destructive conduct. *See Miller*, 541 F.3d at 1096 ("Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons."); *Procup*, 792 F.2d at 1073-74 (pursuant to both inherent powers and constitutional obligations, courts have the "responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others").[7]

Ideally, the existence of non-trivial case filing fees serves as a barrier to entry that "discourage[s] frivolous lawsuits and thus help[s] allocate judicial resources to more meritorious cases." *Miller*, 541 F.3d at 1096. But these kinds of financial incentives are absent in a case such as this, where the Bethels are claiming inability to pay filing fees and promising to submit

---

[7] *See also Hurt v. Social Security Admin.*, 544 F.3d 308, 310 (D.C. Cir. 2008) (plaintiff's "penchant for litigation as a form of costless entertainment compels us to go one step further" and impose sanctions to curtail filing of frivolous claims and appeals); *Werner v. State of Utah*, 32 F.3d 1446, 1447 (10th Cir. 1994) (litigants have "no absolute, unconditional right of access to the courts and no constitutional right of access to prosecute frivolous or malicious actions," such that when they abuse filing and IFP privileges, "filing restrictions are appropriate"); *Telfair*, 2010 WL 4062223, at *37 ("If confronted by repetitive, abusive litigants, the judiciary takes measures to prevent recreational litigation."); *Jones v. Warden of Stateville Correctional Center*, 918 F. Supp. 1142, 1153 (N.D. Ill. 1995) ("A recreational litigant is one who engages in litigation as sport and files numerous complaints with little regard for substantive law or court rules. When confronted with the recreational plaintiff, courts, to protect themselves and other litigants, have enjoined the filing of further case[s] without leave of court.").

IFP petitions at some unspecified future date. The resulting distortion of incentives is a problem. After all, "[i]f engaging in litigation is a pleasurable sport with no costs, then the chronic recreational litigant has no incentive to restrict his abusive behavior." *Jones v. Warden of Stateville Correctional Center*, 918 F. Supp. 1142, 1155; *see also Miller*, 541 F.3d at 1096 ("Absent monetary cost as a constraint, the sheer volume of frivolous IFP suits threatens to undermine the availability of the federal courts to the public.").

Fortunately, the Eleventh Circuit and other federal courts have routinely endorsed the imposition of injunctions by federal courts to restrict (without entirely foreclosing) the access of litigants with a documented history of abusive litigation practices. *See, e.g.*, *Miller*, 541 F.3d at 1096 ("the district courts are authorized by the All Writs Act, 28 U.S.C. § 1651(a), to restrict access to vexatious and abusive litigants"); *Cofield v. Alabama Public Service Com'n*, 936 F.2d 512, 518 (11th Cir. 1991) (federal courts "may limit the filing of frivolous law suits on a case by case basis").[8] District courts enjoy a considerable degree of discretion in fashioning the contours of those restrictions in a particular case, subject to the proviso that they cannot completely foreclose even the most vexatious and abusive litigant from seeking judicial relief. *See Miller*, 541 F.3d at 1097 ("Designing an acceptable procedural device to screen out frivolous IFP filings requires some degree of nuance" and must not "impose blanket prohibitions on the litigant."); *Cofield*, 936 F.2d at 518 (courts "may take other, more creative, actions to discourage hyperactive litigators as long as some access to the courts is allowed"); *Procup*, 792 F.2d at 1074 ("Procup can be severely restricted as to what he may file and how he must behave in his applications for judicial relief. He just cannot be completely foreclosed from *any* access to the court.").[9]

---

[8] *See also Werner*, 32 F.3d at 1448 ("[t]his court approves restrictions placed on litigants with a documented lengthy history of vexatious, abusive actions"); *Telfair*, 2010 WL 4062223, at *37 ("it is well within the broad scope of the All Writs Act, 28 U.S.C. § 1651(a), for a district court to issue an order restricting meritless filing by a litigant whose manifold submissions aim to subject either his/her adversaries to unwarranted harassment or raise concern for maintaining order in the court's dockets").

[9] By way of example, courts have imposed constraints on serial filers such as requiring them to obtain leave of court before filing new lawsuits, limiting them to a certain prescribed number of IFP lawsuits per year, mandating that they submit affidavits listing all cases previously filed involving the same or related causes of action, limiting the number of pages for future pleadings, and so on. *See, e.g., Procup*, 792 F.2d at 1073 (enumerating list of
(Continued)

After careful review of the Bethels' litigation history, and in recognition of the critical importance of balancing the need for imposing legitimate restraints and the Bethels' constitutional right of access to the courts, the Court imposes restrictions on plaintiffs, Glynis and Orlando Bethel, pursuant to the All Writs Act, 28 U.S.C. § 1651(a) and its inherent powers, for the express purpose of curtailing their abusive and vexatious conduct which has encroached and is encroaching on the judicial machinery needed by other litigants. The Bethels are hereby **enjoined** as follows:

1. The Bethels' practice of filing complaints with neither filing fees nor IFP petitions, but only the prospect of filing IFP petitions within 120 days, is abusive. Henceforth, the Bethels are **ordered** to submit, contemporaneously with any new Complaint presented for filing in this District Court, either the prescribed $350 filing fee or a fully completed IFP petition for each and every named plaintiff. Any Complaint that the Bethels present for filing to the Clerk of Court without

---

possible restrictions that "is intended to be neither exhaustive nor limiting"); *In re Oliver*, 682 F.2d 443, 445 (3rd Cir. 1982) ("In appropriate circumstances, courts have gone beyond prohibitions against relitigation and enjoined persons from filing any further claims of any sort without the permission of the court."); *Taylor v. Gee*, 2010 WL 3027665, *7 (M.D. Fla. July 30, 2010) (enjoining abusive plaintiff from filing new *pro se* lawsuits against sheriff in official or individual capacity without first obtaining leave of court); *Jones*, 918 F. Supp. at 1155 (limiting abusive filer to three IFP suits per calendar year "to make the filing of a lawsuit a scarce commodity" and "to ensure that Jones values his right of future access to the courts").

Additionally, at least one appellate court has opined that "[w]hen the number, content, frequency, and disposition of a litigant's filings show an especially abusive pattern, we think a court may deny IFP status prospectively." *Hurt*, 544 F.3d at 310. Such a notion has allure here because, as the *Hurt* court explained, "[i]f [the vexatious litigant] wishes to continue wasting this Court's time … [on] his absurd and frivolous claims, he should have to do it on his own dime." *Id.* at 310-11. However, the Eleventh Circuit has frowned on such an approach, explaining that "[a] blanket injunction that prohibits all IFP filings by a given person would be overinclusive; it would screen out legitimate claims of the indigent, even if these claims concerned fundamental interests." *Miller*, 541 F.3d at 1096; *see also Nazari v. U.S. Federal Probation/USPO*, 2009 WL 1322302, *2 (S.D. Ga. May 11, 2009) ("Imposing a blanket injunction against a serial filer unless he pays accrued filing fee debt is thus no longer an available remedy in this circuit."). Based on its understanding that a blanket prohibition on future IFP filings by the Bethels is not permissible in this Circuit, the Court is constrained not to implement such a component to the injunction crafted in this case.

either a filing fee or an accompanying IFP petition may be summarily dismissed without prejudice via court order.

2. The Bethels are further **ordered** to attach to each future Complaint filed in this District Court a list of (i) all cases they have previously filed involving the same, similar, or related causes of action arising from the same facts; and (ii) all cases they have previously filed against any named defendant in that Complaint. This restriction is necessary because many of the Bethels' lawsuits appear overlapping and duplicative of each other, both factually and legally, such that it may be inordinately difficult and time-consuming for the reviewing court to ascertain from the dense thicket of prior Bethel lawsuits whether the claims asserted therein have previously been raised and, if so, what the outcome may have been.

3. The Bethels have historically undertaken no effort to perfect service of process on defendants, but have instead included a throwaway allegation in the Complaint that they will ask defense counsel to waive service of process pursuant to Rule 4(d), Fed.R.Civ.P. The Court is not aware of any attempts by plaintiffs to actually make such requests in most of their actions in this District Court; rather, they simply file their Complaints and let them sit. To curb such docket-clogging behavior, the Bethels are **ordered** to attach to each future Complaint presented for filing in this District Court either (i) completed proposed summonses for every named defendant on the proper court form, or (ii) proposed waiver of service letters fully compliant with Rule 4(d) for every named defendant.

4. The Bethels have demonstrated a penchant for filing complaints spanning dozens of pages, reciting myriad apparently disconnected and disparate facts, encompassing numerous defendants and multiple apparently unrelated incidents, and rattling off a laundry list of causes of action and constitutional amendments with no supporting facts or allegations for each. To curb these abusive, unwieldy pleadings, it is **ordered** that any future Complaint the Bethels present for filing in this District Court must articulate a short and plain statement of the facts involving each and every defendant they have named, and must separately recite a factual basis for each and every legal theory and alleged constitutional violation, specifically listing which facts go with which claims and which claims go with

which defendants. "Shotgun pleadings" of the kind that the Bethels have routinely filed in this District Court will be rejected as such.[10] The Bethels will not be permitted to file undifferentiated, tangled masses of factual allegations, defendants, and claims, leaving it to the District Court or to the defendants to sort out at some future date which facts go with which claims, which claims are asserted against which defendants, how plaintiffs maintain various constitutional rights have been violated, and so on. Instead, the Bethels will be required to complete this exercise at the front end of their litigation.

5. The Bethels are **prohibited** from filing any new lawsuits in this District Court without prior judicial review and approval. Should the Bethels wish to initiate a new lawsuit, they must submit a proposed Complaint to the Clerk of Court (fully compliant with all other items described above). The Clerk of Court will refer that proposed filing to a Magistrate Judge for pre-filing screening of frivolity or bad faith. If, after review, the Magistrate Judge concludes that the Bethels' proposed complaint states arguable claims for relief (and that the above requirements have been satisfied), then the Clerk of Court will accept the complaint for filing. If the proposed complaint is not accepted for filing, the Clerk of Court shall retain a copy of it for the court's records and shall return the original to the Bethels along with a notice that it was not accepted for filing.

6. The Bethels are **prohibited** from filing any papers containing obscene, profane or abusive language in any lawsuit (past, present, or future) in this District Court. Any such filings (whether in a pleading or subsequent paper of any kind) will be summarily stricken from the record, and may generate immediate sanctions

---

[10] A "shotgun pleading" is one that "lumps multiple claims together in one count and, moreover, appears to support a specific, discrete claim with allegations that are immaterial to that claim." *Ledford v. Peeples*, 605 F.3d 871, 892 (11th Cir. 2010). The problem with such complaints is that "the district court must cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim." *Id.* "Shotgun pleadings impede the administration of the district courts' civil dockets in countless ways," and have long been condemned in this Circuit. *PVC Windows, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 (11th Cir. 2010). Many of the Bethels' Complaints are textbook examples of impermissible shotgun pleading.

(including, without limitation, dismissal of the case, imposition of monetary fines, and separate criminal contempt proceedings). As the Bethels are well aware, they must conduct themselves with proper decorum in this District Court, and failure to do so will not be tolerated.[11]

7. The Court understands that the Bethels have recently made inquiry of Clerk's Office personnel about the possibility of electronically filing pleadings in this District Court. Electronic filing is a privilege, not a right. Given the Bethels' systematic pattern of abusive filings, as documented herein, it is quite clear that such a privilege should not be extended to them because it may simply facilitate and exacerbate their pattern of abuse by making it logistically easier for them to persist in such filings. Accordingly, the Bethels' eligibility to file pleadings electronically in this District Court is **revoked**.

**IV. Conclusion.**

For all of the foregoing reasons, the Complaint is **dismissed without prejudice**. Additionally, the plaintiffs are **ordered and enjoined** to comply with the directives set forth in Section III, *supra*, as to any and all lawsuits they may wish to file in this District Court.

DONE and ORDERED this 2nd day of December, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] Plaintiffs have previously been admonished by this District Court and others to refrain from vile, profane and disrespectful language. Yet they persist. An example of the kind of vitriol that will not be permitted are the plaintiffs' statements in a recent Complaint concerning "tryrannical and criminal Federal Judges such as Kristi Dubose [*sic*]; William Steele; and numerous criminal magistrates." (Civil No. 10-656-CG-C, doc. 1, ¶ 16.) Similarly, in another recent Complaint, the Bethels gratuitously refer to someone who is not even a party to the litigation as a "corrupt police officer … (who GOD physically handicapped him through a violent car crash)." (Civil No. 10-614-CG-C, doc. 1, ¶ 154.) The Bethels may not utilize their filings in this District Court as a platform for spewing such inflammatory and malicious invective.